Tayior, Chief-Justice,
 

 delivered the opinion of the Court:
 

 It is a general rule that an agreement, to be specifically enforced, should be certain and defined, and be proved or admitted to have been concluded by the pai'ties. But the objection to this bill meets us
 
 in limine,
 
 that the agreement sought to be enforced, was never entered into by the parties. The bill pi’ays that the Defendant may be compelled to convey on being paid the money he has expended, in building the mill $ whereas, Ms contract was that he would convey, upon four persons, then named by the parties, ascertaining what it cost him. The parties would npt take upon themselves to ascertain the price of South-all’s moiety, but selected certain individuals to determine it, in whose probity and skill, in the subject referred to them, they had full confidence; and there is no reason to infer that they were willing to transfer this confidence to any others
 
 •,
 
 for the arbitrators were nominated without
 
 *191
 
 allowing them to choose an umpire, in the event of a disagreement, or making any provision for such a case. So that the legal consequence was, that the question referred to the arbitrators could not be determined, unless they were unanimous in their judgment; it being very clear, that where a reference is made to several persons, the concurrence of all is necessary, unless it be expressly provided for in the submission that a less number may make the award. In substance and effect, then, Southall’s agreement was “ not that I will sell you my share of the <s mill upon your paying me what it cost 5 but I will sell <e it to you, provided four certain persons, to be named by
 
 “
 
 us, unite in their judgment and opinion as to what it cost. If they do not concur in opinion, there is no contract between us.” The parties have made an effort towards contracting, which has terminated in an inchoate agreement 5 and if this Court were to direct a reference to the Master, or any other person, to ascertain the price, and decree upon such a report, it would be making a contract for the parties, and then enforcing it.
 

 Suppose, before the arbitrators had met, either party became dissatisfied with the agreement they had made, for any reason, good or bad, it would have been perfectly competent for either to revoke the authority of the arbitrators ; and if they had proceeded to make an award afterwards, the party revoking would not have been bound by it. Can it be less reasonable, that if the arbitrators make an Unsuccessful attempt to estimate the price, either party may refuse to nominate an umpire, or to appoint other arbitrators? There may be as much reason, or more, to avail themselves of the
 
 locus penitentoe
 
 at the latter period, as at the former one. It is a right equally retained by both parties, since they have not surrendered it by the submission on the contract, and neither can compel the other to proceed beyond the stipulation.
 

 But it is said, that the sale of Southall’s moiety was complete; and that all. the arbitrators, had to do, was to
 
 *192
 
 ascertain the price, which was a mere matter of account, within the power of any person who could calculate, and equally within the power of the Master in Equity. That was n0£ e,asily done, is demonstrated by the arbitrators not having been able to accomplish it; and it cannot be doubted that they were selected with a circumspect view and calculation of their peculiar fitness for the task, and of their competency to derive, from local observation and experience, all the facts necessary to enlighten their judgment. If such persons were oppressed by the inquiry, it is utterly improbable that any one appointed by the Court would find it less embarrassing, or be able to conduct it in a manner more likely to lead to a satisfactory result. A price ascertained by persons chosen as these arbitrators were, would, it is probable, be a very different tiling from a price ascertained by a Master in Equity: and to compel Southall to convey upon receiving the latter, would be exercising* an arbitrary discretion, which .this Court wholly rejects. It may not be difficult, in general, to set a price on any thing which is the subject of sale, to estimate the value of a rent, to decide on the quality of a piece of merchandise, to settle the shares of gain and loss between partners $ yet, when the parties have chosen arbitrators to do it, the whole current of authorities repels the interposition of this Court. Stronger reasons exist to prevent their interference in the particular case, to ascertain the cost of the
 
 mills;
 
 a task, which, according to the usual manner of conducting such business in thi| country* by persons doing the chief labor within themselves, as it is called, and with their own slaves, calls for a knowledge of a peculiar kind, and a familiarity with customs and practices, which change with the geographical limits of the State. The price of property is an essential article in .the sale, and the books furnish no case or principle authorizing the Court to substitute itself for the arbitrators, .where a substantial thing is to be settled by them.
 
 *
 
 They
 
 *193
 
 will not do so, even to divide an estate, where the parties have selected particular persons tó do it,* because it is a personal confidence, which, in the nature of things, cannot be reposed in others against the will of its authors. In short, the authorities of law are uniform on the subject, from the first trace that can be found in the books, down to the case of Milner
 
 v.
 
 Grey;
 
 *
 
 and the Court is of opinion, that there are stronger reasons for refusing relief in this case than appeared in that. It is satisfactory to perceive, that before the ample discussion which the subject has recently undergone in England, a great Judge in a sister State, had applied the powers of his vigorous intellect to its elucidation, and discussed it in a manner the most perspicuous and convincing.
 
 †
 
 The demurrer must he sustained, and the bill dismissed with .costs.
 

 *
 

 6 Vesey, 34,
 

 *
 

 14,
 
 Ves. 406.
 

 †
 

 1 Wash. 295.